## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-09-043(1) |
| | § | (C.A. No. C-11-166) |
| ABRAHAM SALOMON RODRIGUEZ, | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DISMISSING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING A CERTIFICATE OF APPEALABILITY

Pending before the Court is Abraham Salomon Rodriguez' (Rodriguez) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 110.[1] Also before the Court is his Memorandum in Support, the government's response, affidavits from defense counsel and an investigating agent, and defendant's reply. D.E. 111, 115, 115-1, 115-2, 116. For the reasons set forth in this Order, the Court dismisses Rodriguez' motion to vacate with prejudice. Additionally, the Court denies Rodriguez a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]  Docket entries refer to the criminal case.

1

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Rodriguez was indicted on January 28, 2009, for Conspiracy to Posses with Intent to Distribute a Controlled Substance, more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). He was arrested on January 30, 2009, and made his first appearance before a federal Magistrate Judge the same day accompanied by counsel. He appeared again on February 3, 2009, at which time his retained counsel moved to withdraw due to a conflict of interest. Arraignment was postponed until February 6, 2009. Before arraignment, counsel was appointed for Rodriguez. See D.E. 12.

On February 27, 2009, Rodriguez' counsel filed a notice of intention to plead guilty. D.E. 18. A plea agreement was signed on March 18, 2009, and Rodriguez was rearraigned the same day. D.E. 19, 21. The plea agreement included a waiver of Rodriguez' right to appeal or to file a motion to vacate pursuant to 28 U.S.C. § 2255. The Court ordered preparation of a Presentence Investigation Report (PSR). D.E. 22.

The Probation department prepared the PSR. The PSR noted that Rodriguez was born in Mexico and his immigration status was unknown. D.E. 32 at p. 3.

Probation calculated Rodriguez' base level offense based upon 72 kilograms of cocaine. D.E. 32 at ¶ 29. The base level was enhanced by two points because of a firearm located during a search of Rodriguez' tire shop and another firearm found in his vehicle. D.E. 32 at ¶¶ 20, 22, 30. The offense level was increased by 4 more points for Rodriguez' role as a leader in the conspiracy that involved five or more participants. Id. at ¶ 32. Rodriguez was

not given credit for acceptance of responsibility. His adjusted offense level totaled 42. Id. at ¶ 36.

Probation determined that Rodriguez qualified as a career offender pursuant to U.S.S.G. § 4B1.1. The base offense level determined pursuant to that provision is 37. Because the calculation of base offense level by Probation was greater (42) without using § 4B1.1, Probation used the greater offense level to compute Rodriguez' sentencing range. Id. at ¶ 37.

Rodriguez' criminal history included his guilty plea to a felony assault on a public servant for which he was sentenced to 60 months deferred adjudication on April 10, 1999. His probation was terminated in 2006. D.E. 32 at ¶ 41. He was also sentenced to 60 months deferred adjudication for delivery of cocaine to run concurrently with his sentence for assault. Id. at ¶ 45. A career offender is defined as one who has previously been convicted of a crime of violence and felony drug trafficking, and is currently convicted on felony drug trafficking. See U.S.S.G. § 4B1.1(a). A Texas deferred adjudication is a conviction for purposes of the career offender enhancement. United States v. Washington, 480 F.3d 309, 318 (5th Cir. 2009) (citing United States v. Joshua, 305 F.3d 352, 352-53 (5th Cir. 2002)); see also United States v. Pinto-Machorro, 408 Fed. Appx. 836 at *1 (5th Cir., Jan. 18, 2011) (designated unpublished) ("Additionally, there is no merit to [the] argument that the order of deferred adjudication did not constitute a conviction for enhancement purposes. A Texas deferred adjudication is a conviction.").

Rodriguez' criminal history points totaled 3, resulting in a criminal history Category II, but his status as a career offender resulted in application of criminal history Category VI. D.E. 32 at ¶ 46.

Retained counsel appeared for Rodriguez before sentencing, replacing his appointed counsel. D.E. 29. Counsel objected to the PSR. D.E. 27. Rodriguez was scheduled for sentencing on May 28, 2009, but his counsel requested a continuance which was granted. Minute Entry May 28, 2009. Sentencing was delayed a second time at Rodriguez' request and was held on July 17, 2009.

Before sentencing, Rodriguez retained different counsel and filed a motion to withdraw his guilty plea. D.E. 53, 56. Rodriguez' counsel urged that Rodriguez be allowed to withdraw his guilty plea on the grounds that he had not been provided close assistance of counsel. D.E. 74 at 4.[2] Initially, Rodriguez advised the Court that he wished to testify on the

---

[2]  Counsel's argument was that Rodriguez did not understand the sentencing factors,
20  MR. MAYS: Our argument, Judge, with respect to
21 Rule 11, and the Carr factors being what they are, is it's
22 evident from what's contained in the transcript when relevant
23 conduct is read, that the Defendant --
24 THE COURT: We'll take that up at sentencing.
25 MR. MAYS: That the Defendant did not understand that
1 those factors, even though he denied them at the time of his
2 plea, could be used against him to greatly enhance the
3 guideline calculation for his sentence and did not understand
4 and hadn't been advised of the fact that he could be assessed a
5 leadership or organizer role, an aggravating role, or that
6 handguns would result in a higher sentence.
Id. at 16-17.
3 MR. MAYS: I would --
4 THE COURT: So --
5 MR. MAYS: -- submit to the Court that at the time
6 that he entered that plea, he did not understand and was not

issue, D.E. 74 at 22. After a brief recess, Rodriguez advised the Court that he did not wish to testify and he wished to withdraw his motion to withdraw his guilty plea. D.E. 74 at 24-25.[3]

The Court proceeded to sentencing, at which time the government accepted Rodriguez' offer to accept 20 kilograms of cocaine as relevant conduct. The government advised the Court that it would not put on evidence to support the enhancements for

_____

      7 aware of the fact that all of the factual recitation that was
      8 presented by the prosecutor could be found by the Court to be
      9 true and could be used to increase his range of sentence under
      10 the United States Sentencing Guidelines.

Id. at 23.

      [3] The discussion after the recess follows,
      8 THE COURT: Are we ready to take testimony?
      9 MR. MAYS: No, Your Honor. After further discussion
      10 with Mr. Rodriguez, he's indicated that he does not, in fact,
      11 want to testify in pursuing the motion to withdraw his plea and
      12 would instead ask the Court to allow him to set aside that
      13 motion to withdraw his plea and persist in the plea that he
      14 entered on March 12th of 2008 -- 2009.
      15 THE COURT: Is that what you want to do?
      16 THE DEFENDANT: Yes, Your Honor.
      17 THE COURT: Are you sure?
      18 THE DEFENDANT: Yes, Your Honor.
      19 THE COURT: Well, you can withdraw your motion to
      20 withdraw your plea. You don't want to testify on the issue?
      21 THE DEFENDANT: No, Your Honor.
      22 THE COURT: Very well. Anybody threaten you or make
      23 any promises to you to dissuade you to not testify or motion --
      24 THE DEFENDANT: No, Your Honor.
      25 THE COURT: -- withdraw your motion? I'm sorry?
      1 THE DEFENDANT: No, Your Honor.
      2 THE COURT: Okay. . . . .

Id.

leader/organizer or for the firearms. Id. at 26.[4] The government also agreed that Rodriguez qualified as a career offender and that he should receive credit for acceptance of responsibility. The government's concessions reduced the applicable range of imprisonment from 360 months to life to 262 to 327 months. Id. at 26-27. After the government's concessions, defense counsel argued that the career offender enhancement overstated the seriousness of Rodriguez' past criminal history and vastly increased the sentencing range. Id. at 33-36. The Court downwardly departed from the Guideline calculation of 262-327

---

[4]   The government stated its position as follows,
22 It is also my opinion that legally Mr. Rodriguez does
23 qualify for the career offender status, which would bump him to
24 a Level 37, Criminal History Category VI, automatically, just
25 because of his status with his two priors for assault on a
1 public servant and delivery of cocaine.
2 I do not wish to put on any evidence, unless the
3 Court wants to hear evidence, about -- and I would ask the
4 Court to withdraw the enhancements for weapons, which was 2,
5 and leader/organizer, which was 4. This would, at this point,
6 leave Mr. Rodriguez with a criminal history -- excuse me --
7 with an Offense Level 37, Criminal History Category VI. And we
8 would ask the Court -- I would not be opposed to the granting
9 of acceptance of responsibility, Your Honor, which would, I
10 think, be a 34/VI, if I'm correct. And this is what we've
11 talked about with Probation, leaving a guideline range of 262
12 to 327 months.
           *       *       *       *
6 MS. HAMPTON: Basically, I think that the Government
7 and the Defense, the thing that we agree on is that
8 Mr. Rodriguez does qualify as a career offender, and that the
9 relevant conduct should be a Level 34, which is between 15 and
10 50 kilograms of cocaine.
11 The other objections are to leader/organizer and to
12 the weapons, the firearms enhancement, Your Honor. And the
13 Government would agree to withdraw those adjustments.

Id. at 25-27.

months and sentenced Rodriguez to 240 months imprisonment, 5 years supervised release, and a $100 special assessment. Id. at 41. Rodriguez agreed to forfeit a parcel of real estate as part of his plea agreement. See D.E. 50, Amended Agreed Final Judgment of Forfeiture. The Court reminded Rodriguez that he waived his right to appeal. D.E. 74 at 42. Judgment was entered on the docket on July 23, 2009. D.E. 65.

Rodriguez filed a notice of appeal on September 28, 2009. D.E. 70. The Fifth Circuit affirmed his conviction and sentence on October 5, 2010. D.E. 103. Rodriguez filed his timely motion to vacate on  May 18, 2010. D.E. 110.[5]

### III.  MOVANT'S ALLEGATIONS

Rodriguez urges multiple grounds, including multiple claims of ineffective assistance of counsel, 1) appointed counsel was ineffective at the plea stage because he failed to properly investigate before advising Rodriguez to plead guilty, 2) counsel did not advise him of his sentencing exposure as a career offender, 3) sentencing counsel failed to properly prepare for the motion to withdraw Rodriguez' guilty plea, 4) sentencing counsel failed to challenge the application of career offender status, and 5) counsel's failures at the plea stage made his guilty plea unknowing and involuntary.

Additionally, Rodriguez claims that the sentence was procedurally and substantively unreasonable. Rodriguez also contends that the government breached the plea agreement by concurring with the Probation Department's conclusion that Rodriguez was a career offender.

---

[5]  Rodriguez filed his original motion to vacate while his appeal was pending. D.E. 101. This Court dismissed the motion without prejudice. D.E. 109.

Finally, Rodriguez claims that his plea was unlawfully induced or not made voluntarily because of his counsel's failure to advise him of his sentencing exposure as a career offender and counsel's failure to advise him of the deportation consequences of his plea. He also claims that his counsel at sentencing and the Court coerced him into admitting that he is a career offender when he is not.

## IV.  ANALYSIS

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

### B.    Rodriguez' Waiver of His Right to File a Motion to Vacate

Rodriguez waived his right to file a motion to vacate by his plea agreement. D.E. 21 at ¶ 7. Rodriguez' claims of ineffective assistance do not automatically relieve him of his waivers of appeal and § 2255 post-conviction proceedings. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only

8

when the claimed assistance directly affected the validity of that waiver or the plea itself"). In <u>White</u>, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." <u>Id</u>. at 343 (internal citations omitted).

As a preliminary matter, this Court must decide whether Rodriguez' claims that counsel failed to properly advise him of his sentencing exposure as a career offender and failed to advise him that he would likely be deported if he was convicted, renders his plea involuntary and thus relieves Rodriguez of his waivers. Rodriguez does not claim that he did not understand the waivers,[6] but rather that the entire plea should be vacated and he be

---

[6] During the plea colloquy, the Court advised Rodriguez of this provision in his plea agreement and questioned him as follows,

> 16 THE COURT: You're also giving up the important right
> 17 to file a petition under Title 28 of the United States Code,
> 18 Section 2255. That petition is in the law, and you have the
> 19 right to file it and ask the Court to modify or vacate your
> 20 sentence or your conviction after they have become final. Do
> 21 you understand that?
> 22 THE DEFENDANT: Yes, Your Honor.
> 23 THE COURT: And you're giving up that right as well.
> 24 Do you understand that?
> 25 THE DEFENDANT: Yes, Your Honor.
>                    *       *       *       *
> 9 THE COURT: Did you know that you were giving those
> 10 up when you signed this document?
> 11 THE DEFENDANT: Yes, Your Honor.

D.E. 44 at 16-17.

returned to the position he was in before he pled guilty. Next, the Court must determine whether the government breached the plea agreement as Rodriguez claims. Unless Rodriguez prevails on one of these issues, this Court will enforce his waiver of the right to file his motion to vacate and will not consider his remaining claims on their merits.

### C.   Involuntary Plea

####   1.   *Standard for evaluating a challenged guilty plea*

A "'plea of guilty entered by one fully aware of the direct consequences" must stand "unless induced by threats," misrepresentation, or "by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v. United States, 246 F.2d 571, 572 n.2. (1957) (en banc), rev'd other grds, 356 U.S. 26 (1958)). Even if counsel failed to advise Rodriguez of his exposure as a career offender, an issue this Court does not decide, "reliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary." United States v. Lucia, 991 F.2d 179, 180 (5th Cir. 1993) (citing United States v. Jones, 905 F.2d 867 (5th Cir. 1990)). "As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences." Jones, 905 F.2d at 868 (internal citations omitted).

As a safeguard to ensure that guilty pleas are knowing and voluntary, federal courts are required to question a defendant on the core issues of knowledge of the consequences of his plea and the voluntariness of the plea. Fed. R. Crim. P. 11(b). Courts give great weight to a defendant's statements during the plea colloquy. Blackledge v. Allison, 431 U.S. 63, 73

(1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002); see also United States v. Abreo, 30 F.3d 29, 31 (5th Cir.1994) (placing great weight on defendant's statements during plea); United States v. Maldonado-Rodriguez, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

2.  *Rodriguez was admonished before his plea was accepted*

Rodriguez was questioned during re-arraignment on the voluntariness of his plea and his understanding of its consequences. Fed. R. Crim. P. 11(b).

> 18 THE COURT: You are accused of violating Title 21,
> 19 Section 846, which is a law of the United States that makes it
> 20 against the law for two or more persons to agree among
> 21 themselves to possess an illegal drug for the purpose of
> 22 distribution. And you are accused of committing this crime of
> 23 conspiracy to possess cocaine for the purpose of distribution.
> 24 That conspiracy is alleged to have occurred between January
> 25 2006 and January 2009, that the conspiracy is alleged to
> 1 involve more than 5 kilograms of cocaine.
>           *     *     *     *
> 20 . . . Do you understand that?
> 21 THE DEFENDANT: Yes, Your Honor.
> 22 THE COURT: Do you believe you did that?
> 23 THE DEFENDANT: Yes, Your Honor.
>            *     *     *     *
> 10 THE COURT: Okay. Now, the maximum possible
> 11 punishment is a period of life in the penitentiary. There's a
> 12 mandatory minimum sentence of 10 years in the penitentiary.
> 13 There is no probation from this sentence, and there is no
> 14 parole. So there is a minimum 10-year sentence in the
> 15 penitentiary that you would have to serve. There's a maximum
> 16 $4 million fine. There's a mandatory $100 special assessment.
> 17 I must impose a period of supervision of your
> 18 behavior. It will begin when you are released from custody.
> 19 The period of supervision is five years. It can last as long

20 as the rest of your life. If you violate the terms and
21 conditions of your supervision, you can be returned to the
22 penitentiary to serve a sentence of up to five years. Do you
23 understand that?
24 THE DEFENDANT: Yes, Your Honor.
25 THE COURT: At sentencing, I am required to calculate
1 and consider the advisory guidelines of the United States
2 Sentencing Commission. I will calculate those guidelines. I
3 will consider them at your sentencing. I will also consider
4 any departures from them. They are advisory in nature, but
5 they play an important part in my decision in deciding what
6 your sentence should be.
7 I will also take into account all of the sentencing
8 factors that are described in Title 18 of the United States
9 Code, Section 3553. Do you understand?
10 THE DEFENDANT: Yes, Your Honor.
       *     *     *     *
24 THE COURT: I find the Defendant understands the
25 charge and the consequences of a plea.
1 Has anyone threatened you or forced you to plead
2 guilty?
3 THE DEFENDANT: No, Your Honor.
4 THE COURT: Has anyone promised you leniency if you
5 would plead guilty?
6 THE DEFENDANT: No, Your Honor.
7 THE COURT: Who makes the decision for you to plead
8 guilty?
9 THE DEFENDANT: I do.

D.E. 44 at 10-14.

The Court reviewed the plea agreement with Rodriguez and asked him if he

understood the agreement. He replied that he did. D.E. 44 at 14-15. The Court went on to ask

whether he had reviewed the plea agreement with counsel and Rodriguez testified that he

had. Id. at 15-17.[7] The plea agreement Rodriguez signed stated in part as follows:

> The defendant is aware that the sentence will be determined with reference to the United States Sentencing Commission's *Guidelines Manual* (U.S.S.G.). Defendant acknowledges and agrees that the Court on Count One may impose any sentence not less than 10 years and up to and including Life imprisonment, which  is the maximum term provided for a violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), and that the sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing reform Act pf 1984, 18 U.S.C. § 3553(a)(1) and (2) and § 3661. If the Court should impose any sentence up to the maximum established by statute, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement. (D.E. 21 at ¶ 6 (emphasis in original).

The government summarized the facts of the offense during re-arraignment and the

Court asked Rodriguez if the facts as stated were correct. He agreed with much of the factual

rendition, but disputed the drug quantity,

---

[7]   Rodriguez responded to the Court's questions regarding the plea agreement,
20 Mr. Rodriguez, I believe that document is a plea
21 agreement. Have you read that document and discussed it with
22 your lawyer?
23 THE DEFENDANT: Yes, Your Honor.
24 THE COURT: And did you ask him questions about it?
25 THE DEFENDANT: Yes, Your Honor.
1 THE COURT: And did he explain what you asked him?
2 THE DEFENDANT: Yes, Your Honor.
3 THE COURT: He gave you answers that you understood?
4 THE DEFENDANT: Yes, Your Honor.
5 THE COURT: Are you satisfied with those answers?
6 THE DEFENDANT: Yes, Your Honor.
7 THE COURT: And do you believe you understand the
8 document?
9 THE DEFENDANT: Yes, Your Honor.
10 THE COURT: Did you sign it?
11 THE DEFENDANT: Yes, Your Honor.

D.E. 44 at 14-15.

11 THE COURT: Is that what happened in your case,
12 Mr. Rodriguez?
13 THE DEFENDANT: Part of it. Part of it's true, but
14 some of it ain't, Your Honor.
15 THE COURT: Did you do the things described by the
16 Prosecutor?
17 THE DEFENDANT: Yes, Your Honor.
    *    *    *    *
18 THE COURT: You said that there were some of those
19 things that you weren't doing. Do you want to tell me what
20 those things were that you weren't doing?
21 THE DEFENDANT: They're over-exaggerating like with
22 some of the things that they're saying that I was purchasing so
23 many kilograms of cocaine. It wasn't that much, Your Honor.
24 It was -- part of it was, but it wasn't that many.

D.E. 44 at 27-28.

Rodriguez claims that his attorney predicted that his sentence would be 10-15 years

and that Rodriguez was never advised that he would be considered a career offender with a

much higher sentencing exposure than the statutory minimum sentence of 10 years, all of

which renders his guilty plea involuntary.

Yet Rodriguez' plea agreement specifically advised him that any estimate of probable

sentence that he received from counsel, the U.S. Attorney's office or probation is "only a

prediction, not a promise . . . ." D.E. 21 at ¶ 8. The plea agreement further emphasized that

the sentencing guidelines are only advisory and the Court may impose a lower or higher

sentence. Id. The Court also emphasized at rearraignment that the decision regarding

sentencing would be made by the Court at a later date after preparation of the PSR. D.E. 44

at 11-12, 14-15.

14

"A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002), overruled on other grounds, Glover v. United States, 531 U.S. 198, 203 (2001). Under these circumstances, even if Rodriguez' counsel estimated his expected sentence without including a career offender enhancement, which counsel disputes and this Court does not decide,[8] Rodriguez has not shown that his plea was unknowing or involuntary.

3.      *Claim that plea was involuntary because counsel did not advise Rodriguez of his likely deportation*

Rodriguez also claims that his plea was involuntary because counsel failed to tell him he was likely to be deported if convicted. The Supreme Court held that counsel who did not advise a lawful permanent resident alien of his almost certain deportation if he was convicted of drug trafficking did not meet professional standards pursuant to Strickland v. Washington 466 U.S. 668 (1984). Padilla v. United States, — U.S. ----, 130 S.Ct. 1473, 1486 (2010). The Padilla Court did not determine whether Padilla's plea was rendered involuntary nor did it determine the issue of prejudice.

During rearraignment, the Court asked Rodriguez about his citizenship, Rodriguez

---

[8]   Counsel's affidavit states that he explained Rodriguez' exposure as a career offender. D.E. 115-2 at ¶ 5. The Court does not need to resolve the factual dispute between the defendant's allegations and counsel's affidavit to decide the voluntariness of Rodriguez' plea.

replied that he was born in Mexico and is not a United States citizen. Id. at 3. At that time the Court asked Rodriguez if he understood that if convicted, he would likely be deported. Rodriguez said "yes." Id. at 4. Later during rearraignment, before Rodriguez pled guilty, the Court further admonished Rodriguez,

> 14 THE COURT: And you understand also that unless the
> 15 law changes, and I don't think it will, you will be deported
> 16 from the United States whenever your sentence is over. You
> 17 understand that?
> 18 THE DEFENDANT: Yes, Your Honor.

Id. at 12.

In addition to the admonishments by the Court, the news that a guilty plea to felony drug distribution could result in deportation was not new to Rodriguez. Four years earlier, when he pled guilty in state court in 2005 to cocaine distribution, Rodriguez was advised that his guilty plea could result in his deportation. See D.E. 35 at p. 2 ("The defendant is further advised that if the defendant was not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."). Moreover, unlike Padilla who had a legal status in this country, Rodriguez did not have any legal right to be present here.

The Court rejects Rodriguez' claim that his plea was involuntary because he was allegedly not informed by counsel of his likely deportation.[9] The Court twice informed

---

[9]  Counsel's affidavit also states that he advised Rodriguez of the deportation consequences. D.E. 115-2 at ¶ 2.

16

Rodriguez before he pled guilty that he would likely be deported and Rodriguez twice affirmed that he understood that consequence. See United States v. Oliver, 630 F.3d 397, 413 (5th Cir. 2011) (rejecting claim that defendant's waiver was involuntary because counsel allegedly misinformed him regarding his plea waiver, although the Court informed him of the waiver before he pled guilty). In sum, the Court finds that Rodriguez' guilty plea was knowing and voluntary.

       4.    *Government's alleged breach of plea agreement*

Rodriguez next claims that he should be relieved of his guilty plea because the government breached its plea agreement with him by agreeing with the Probation Department that Rodriguez qualified as a career offender. D.E. 111-1 at 15 (Ground 3). The government did not address this issue in its response.

An alleged breach of a plea agreement may be raised on appeal even when the plea agreement includes an appeal waiver. United States v. Roberts, 624 F.3d 241, 246 (5th Cir. 2010). Although Roberts dealt with a waiver of appeal, this principle applies equally to a § 2255 waiver. See United States v. Valdez, 2008 WL 4753529 at *4 (S.D. Tex., October 29, 2008)(designated unpublished) (claim that government breached plea agreement falls outside § 2255 waiver).

"The Government is required strictly to adhere to plea agreements." Roberts, 624 F.3d at 246. "[A] plea agreement is construed strictly against the Government as the drafter. To assess whether a plea agreement has been violated," the court must determine "whether the government's conduct is consistent with the defendant's reasonable understanding of the

agreement." <u>Id</u>. (quoting <u>United States v. Elashyi</u>, 554 F.3d 480, 501 (5th Cir. 2008)). "The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence."  <u>United States v. Price</u>, 95 F.3d 364, 367 (5th Cir.1996).

The issue here is whether the government's agreement to recommend that Rodriguez "be given maximum credit for acceptance of responsibility and a sentence of imprisonment at the lowest end of the applicable guideline range" (D.E. 21 at ¶ 2), was violated by the government's agreement that Rodriguez qualified as a career offender.

The plea agreement advised Rodriguez that "Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court." <u>Id</u>. at ¶ 5. Paragraph 6, quoted herein, also references the Guideline Manual. <u>Id</u>. at  ¶ 6, <u>supra</u> at p. 11. Paragraph 8 of the plea agreement reminds the defendant that sentence has not yet been determined by the Court and that any estimate of sentencing range is a prediction, not a promise . . ."  <u>Id</u>. at  ¶ 8. Additionally, the plea agreement provides that the government reserves the right to bring its version of the facts to the attention of the Probation Office in connection with preparation of the PSR and to "set forth or dispute sentencing facts or facts material to sentencing . . . ." <u>Id</u>. at  ¶ 9.  The plea agreement does not commit the United States to a specific sentence or to a specific Guideline range.

In <u>Roberts</u>, the Fifth Circuit held that the government breached the plea agreement by urging application of career offender status to the defendant. <u>Roberts</u>, 624 F.3d at 248. In finding breach, the Fifth Circuit held,

> Accordingly, our precedent suggests that the prosecutor in this case violated the plea agreement by arguing, even if mildly, that the career offender enhancement should apply *after agreeing to a different, lower base offense level in the plea agreement*. Roberts's reasonable understanding of the plea agreement was that it stipulated a base offense level. By arguing for a different base offense level at the sentencing hearing, the Government failed to uphold its end of the bargain. The Government's conduct was inconsistent with the defendant's reasonable understanding of the plea agreement.

Id. (emphasis added).

The critical distinction between the plea agreement at issue in Roberts and the plea agreement here is that the Roberts agreement included a stipulation of offense level.[10] See United States v. Bell, 2011 WL 3689257 at *6 (10th Cir., Aug. 24, 2011) (designated unpublished) (holding plea agreement had not been violated by the government's advocacy of sentencing defendant as a career offender where there was no agreement as to offense level). The Bell court specifically rejected application of the Roberts case based upon the differences in the plea agreement language.

---

[10]   Roberts quoted from the plea agreement as follows,

GUIDELINE STIPULATIONS: The parties stipulate to the following factors that affect the appropriate sentencing range in this case:

a. The base level under U.S. Sentencing Guidelines Manual § 2D1.1(c)(5) (2007) (U.S.S.G.) is 30;

b. A reduction of two levels for acceptance of responsibility under U.S.S.G. § 3E1.1 applies; however, *this stipulation* is subject to the recommendation of the United States Probation Office. *If circumstances indicating that the Defendant has not accepted responsibility became known after entry of this agreement, this stipulation is void and Defendant may object to the failure of the Presentence Report to recommend the reduction*.

Id. at 246-47 (emphasis in original).

Here, the government committed itself to recommend that the Court sentence Rodriguez to the low end of the applicable guidelines, which the government did. Additionally, although not required to do so by the terms of the plea agreement, the government decided to forego putting on evidence to support enhancements for leadership role and firearms that would have justified an increase in the applicable guideline calculation beyond the career offender guideline. See PSR D.E. 32 at ¶¶ 30-34. Under the plain terms of the agreement, the government did not breach its agreement by agreeing with the Probation Department that Rodriguez qualified as a career offender. See United States v. Howard, 299 Fed. Appx. 885 at *1 (11th Cir., Nov. 5, 2008) (designated unpublished);[11] United States v. Parker, 512 F.3d 1037, 1039 (8th Cir. 2008) (where parties did not stipulate to total offense level in plea agreement, application of career offender status in calculating guidelines not a breach of agreement); United States v. Peck, 496 F.3d 885, 889-90 (8th Cir.

_____

[11]   The Howard court held as follows,

We conclude that the government did not breach the plea agreement. First, the government did not breach its promises in the plea agreement to recommend that the district court sentence Howard "within the advisory guideline range produced by application of the Sentencing Guidelines" and not depart upward or downward from the guidelines range. . . . The government's agreement with the district court's calculation of the advisory guidelines range, which included the application of the career-offender enhancement, is not equivalent to a recommendation that the district court depart upward from the guidelines range. Compare U.S.S.G. § 4B1.1 (career-offender enhancement), with U.S.S.G. § 4A1.3(a) (policy statement on upward departures based on criminal history category underrepresenting criminal history).

Id.

2007) (government did not breach plea agreement by arguing for enhancements where plea agreement did not include a calculation of offense level and explicitly allowed government to provide relevant information to the Probation Office); United States v. Young, 2006 WL 3411450 at *3 (10th Cir., Nov. 28, 2006) (designated unpublished) (government did not breach plea agreement by responding to defendant's objections to sentencing enhancements, including application of career offender, in a case in which the plea agreement required the government to recommend a sentence at the low end of the applicable guideline and not to request an upwards departure).

Because the Court finds that the government did not breach the plea agreement, the plea agreement is enforceable, including Rodriguez' waiver of his right to bring this motion to vacate. Accordingly, the Court does not reach the merits of the remainder of Rodriguez' claims, which must be dismissed.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rodriguez has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment

of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Rodriguez is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Rodriguez' motion to vacate, set aside or correct sentence

pursuant to 28 U.S.C. § 2255 (D.E. 110) is DISMISSED with prejudice to refiling. He is also denied a Certificate of Appealability.

It is so ORDERED on the  11th   day of December 2011.

_Hayden Head_

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE